AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*March 14, 2025*
Nathan Ochsner, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Henry Lee JACKSON and Damarcus Leo WILLIAMS | ) ) ) ) ) | Case No. **4:25-mj-0147** |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  February 7 to March 13, 2025  in the county of  Harris  in the  Southern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. § 841(a)(1) | Possession with Intent to Deliver a Controlled Substance, to wit methamphetamine |
| Title 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance, to wit methamphetamine |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

ATF Special Agent Natasha Smith
*Printed name and title*

Sworn to before me via telephone.

Date: 03/14/2025

*Judge's signature*

City and state: Houston, Texas

Richard Bennett, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | CASE NO. **4:25-mj-0147** |
| VS. | § § | |
| HENRY LEE JACKSON ET AL. | § | |

AFFIDAVIT IN SUPPORT OF
CRIMINAL COMPLAINT

I, NATASHA H. SMITH, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and I have been so employed since January 2016. I have a Bachelor's Degree in Criminology from the North Carolina State University, and a Graduate Certificate in Homeland Security from the Pennsylvania State University. In 2014, I graduated from the Wake Tech Basic Law Enforcement Training (BLET) Police Academy in North Carolina. I am also a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program in Glynco, Georgia. I also graduated from the Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training Course in Glynco, Georgia. In 2020, I graduated from ATF's Crisis Negotiator (CN) Basic School; CNs are a component of ATF's Special Response Team (SRT).

2. As an ATF Special Agent, I have personally conducted multiple complex criminal investigations on a variety of Federal and state criminal statutes, some specifically involving: the

unlawful possession of firearms by prohibited persons; burglaries and armed robberies of Federal Firearms Licensees (FFL); individuals dealing in firearms without a license; the illegal smuggling of firearms from the US into the country of Mexico; the possession and distribution of narcotics; and criminal street gangs involved in various criminal acts to include those listed above, as well as murder, robbery, assault, interstate transport of stolen goods, money laundering, organized crime, identity theft, and human trafficking.  During these investigations, I have participated in various types of investigative techniques, including: electronic surveillance; Title III wiretaps; investigative interviews; undercover agents and informants to facilitate controlled purchases of firearms from suspects; search warrants and subsequent analysis of social media accounts and other digital evidence; mail covers; garbage searches; GPS tracking devices; pole-mounted cameras; the service of Grand Jury subpoenas; courtroom testimony; and the execution of Federal and State search and arrest warrants.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. For the reasons stated below, I submit that there is probable cause to believe that Henry Lee JACKSON (DOB: 01/30/1993) and Damarcus Leo WILLIAMS (DOB: 07/05/1992) violated the following federal laws between February 7, 2025, and March 13, 2025: Title 21 U.S.C. § 841(a)(1) – Possession with Intent to Deliver a Controlled Substance, to wit methamphetamine; and Title 21 U.S.C. § 846 – Conspiracy to Distribute a Controlled Substance, to wit methamphetamine.

## PROBABLE CAUSE

5. The United States, specifically the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") is conducting an ongoing criminal investigation of known and unknown suspects in the Jackson, Mississippi area. In February 2025, ATF Mississippi provided information to ATF Houston Group II regarding a source of supply of methamphetamine pills, who is also involved in the sale and acquisition of firearms, located in the Houston, Texas area. Henry JACKSON was identified as the supplier of large quantities of methamphetamine pills to the suspects of the ATF investigation in the Jackson, MS, area.

6. An ATF SA, acting in an Undercover Capacity (hereinafter "UC"), was put in contact with JACKSON via JACKSON's known cell phone to allow the UC to purchase methamphetamine from JACKSON.

7. The ATF UC and JACKSON communicated numerous times via cell phone in early February 2025 to facilitate the UC's purchase of suspected methamphetamine pills and firearms from JACKSON. These firearms included two (2) pistols, one (1) of which appeared to have a machinegun conversion device (MCD) installed. When the UC asked JACKSON about the MCD, JACKSON acknowledged that it was an MCD and offered to sell the firearm to the UC for $1,100.

8. On or about February 7, 2025, the ATF UC arranged to meet JACKSON in a parking lot located at 10707 North Fwy., Houston, TX 77037, which is in the Southern District of Texas, via cell phone. The cell phone contact was audio recorded. The UC drove to the location in a UC vehicle. The UC met with JACKSON inside the UC vehicle. JACKSON advised he was able to get whatever narcotics the UC wanted within a day's notice. JACKSON also advised the UC he was able to acquire various firearms from several different sources, but stated he was unable to acquire the previously discussed pistols for the UC's purchase that day. The UC purchased

approximately four thousand (4,000) suspected methamphetamine pills from JACKSON, weighing approximately 847.9g gross weight. JACKSON and the UC agreed to discuss additional narcotics and firearm transactions in the near future. The operation was audio and video recorded.

9. The pills were later sent to the DEA South Central Lab for analysis. The testing confirmed the presence of methamphetamine, with a net weight of approximately 840.9g.

10. The UC and JACKSON continued communicating via cell phone between February 10 and 18, 2025. JACKSON advised he had a pistol for sale to the UC. JACKSON also arranged to sell approximately 10,000 pills of suspected methamphetamine to the UC for $2,500.

11. On or about February 18, 2025, the ATF UC arranged to meet JACKSON in a parking lot located at 12182 Veterans Memorial Dr., Houston, TX 77067, which is in the Southern District of Texas, via cell phone. The cell phone contact was audio recorded. The UC drove to the location in a UC vehicle. The UC met with JACKSON inside the UC vehicle. The UC inquired as to whether JACKSON could sell other types of narcotics, to include "blues" (fentanyl pills), which JACKSON stated he could. JACKSON advised he was unable to acquire the previously negotiated pistol for sale to the UC that day. The UC purchased approximately ten thousand (10,000) suspected methamphetamine pills from JACKSON, weighing approximately 1440.0g gross weight. JACKSON and the UC agreed to discuss additional narcotics and firearm transactions in the near future. The operation was audio and video recorded.

12. The pills were later sent to the DEA South Central Lab for analysis. The testing confirmed the presence of methamphetamine, with a net weight of approximately 1,420.6g.

13. The UC and JACKSON continued communicating via cell phone between February 26 and March 13, 2025. JACKSON arranged to sell approximately ten thousand (10,000) pills of suspected methamphetamine to the UC for $2,700.

14. On or about March 13, 2025, the ATF UC arranged to meet JACKSON in a parking lot located at 26858 I-45 N., Spring, TX 77386, which is in the Southern District of Texas, via cell phone. The cell phone contact was audio recorded. The UC drove to the location in a UC vehicle. JACKSON arrived in a Nissan Kicks SUV with an unknown black male passenger (later identified as Damarcus WILLIAMS). JACKSON exited his vehicle and met with the UC inside the UC vehicle. The UC purchased approximately ten thousand (10,000) suspected methamphetamine pills from JACKSON, weighing approximately 1,277.7g gross weight. JACKSON and the UC agreed to discuss additional narcotics and firearm transactions in the near future. The operation was audio and video recorded.

15. Following the conclusion of the UC purchase, JACKSON was arrested by ATF. During the arrest operation, WILLIAMS exited the passenger side of JACKSON's SUV despite police commands telling him to not move. WILLIAMS ran through the parking lot, attempting to escape. WILLIAMS was apprehended shortly thereafter. JACKSON and WILLIAMS were both transported to the ATF Houston Field Division Office, where they were placed into separate interview rooms.

16. In a post-Miranda interview, JACKSON confessed to his role in the drug conspiracy, stating WILLIAMS provided him with the suspected methamphetamine pills for the two (2) previous transactions with the UC. JACKSON advised WILLIAMS would normally front him the suspected methamphetamine pills, then JACKSON would pay WILLIAMS following the completion of the deal. JACKSON advised that morning, WILLIAMS arrived at JACKSON's house with the ten thousand (10,000) suspected methamphetamine pills ordered by the UC. WILLIAMS drove with JACKSON to the deal so that he could be paid immediately following the

deal. JACKSON advised WILLIAMS is his only source of supply for illegal narcotics. The interview was audio and video recorded.

17. In a post-Miranda interview, WILLIAMS confessed to his role in the drug conspiracy, stating he provided JACKSON with the suspected methamphetamine pills that day, as well as on multiple previous occasions. The interview was audio and video recorded.

18. The suspected methamphetamine pills will be sent to the DEA South Central Lab for analysis. Laboratory analysis results are pending.

19. A query of law enforcement databases identified both JACKSON and WILLIAMS as having previously been convicted of a crime punishable by a term of imprisonment exceeding one (1) year.

## CONCLUSION

20. Based on these facts, I believe probable cause exists for the issuance of complaint and arrest warrants for Henry JACKSON and Damarcus WILLIAMS for violations of Title 21 U.S.C. § 841(a) and 846.

_____
Natasha Smith
Special Agent, ATF

The foregoing affidavit was sworn to telephonically on this 14th day of March, 2025, and I find probable cause.

_____
RICHARD BENNETT
U. S. Magistrate Judge